All rise. No motion, no question. The business is now in session. I will present to the proper meeting the ordinance provided. I would like everyone to be seated. Good morning to all. Okay, would the lawyers who are going to argue the case please approach the bench. Introduce yourself to the court. Good morning, Your Honor. I'm Scott Howley. I represent the defendant Appellant, Giant Manufacturing Co. Good morning, Your Honor. My name is Ken Hoffman. I am one of the attorneys for Jared Kowal, who is the plaintiff appellee in this matter. Okay. That microphone just records.  I just want you to know that. All right. For the appellant, how much time do you need for your rebuttal? I anticipate four minutes at most, Your Honor. Okay. Judge Lampkin is not here, but she will listen to the tapes. All right. Let's proceed. Hold on. May it please the court. I am Scott Howley, and I represent the defendant Appellant in this interlocutory appeal, Giant Manufacturing Co. A Taiwanese corporation that has no meaningful contacts to the state of Illinois. Cops, I have a question. Who is or what is Giant Bicycle, Inc.? Giant Bicycle is a wholly-owned subsidiary of a Dutch corporation known as Gaiwan BV. Giant Bicycle is the distributor, the U.S. distributor of Giant brand bicycles, the exclusive distributor within the United States. Giant Bicycle is also a defendant in this action. It has not challenged personal jurisdiction and remains a defendant subject to the personal jurisdiction of the courts of Illinois. And their responsibility as distributors is to make sure that the product got into the United States, into the various shops and stores that would sell the product. That's correct. It's a giant manufacturer's understanding that Giant Bicycle doesn't sell directly to the public but distributes to individual retailers who act as vendors for the Giant brand bicycle. So how is your client's position that they didn't know that the product was in Illinois or used by the plaintiff here since they had a distributor that was distributing the product throughout the country? Well, what Giant Manufacturing is aware of is that it has a wholly-owned subsidiary, Gaiwan, which itself has the subsidiary Giant Bicycle, which is the distributor. Giant Manufacturing manufactures bicycles. It is not in the business of distribution. It does not monitor the means of distribution or the scope of distribution. There is no evidence that it is aware or conscious of the specific scope of the distribution of its bicycles in the United States. Well, why would they enter into a contract with someone that's going to be distributing their product if they don't know if the product is going to be distributed within the United States? Because that's not their business. Certainly they wish to... Giant Bicycle or Giant Manufacturing? Giant Manufacturing. It's a manufacturer. It's a global manufacturer, and it certainly hopes for wide distribution of its products. But that's not the same as knowledge of particular distribution to particular nations or, in some cases, nations or to particular states within the United States. And, in fact, there is no evidence within the record that Giant Manufacturing was aware of the particular distribution of its bicycles other than in 1988 when it stated in an answer to an interrogatory that it had been aware that its bicycles had been distributed in Illinois in that year. So are you arguing that Giant Manufacturing did not have actual knowledge or implied or inferred knowledge? Consisting with the record, there is no evidence that it had any actual knowledge at all, and there is no evidence of constructive knowledge either, no indication that it was taking a role in the distribution process or anything beyond the manufacturing and exploring process that sent its bicycles to the United States. Once they are within the United States, they are the responsibility of Giant Bicycle, which has the wherewithal and the knowledge to maintain an awareness of particularly where those bicycles go. And that's what the stream of commerce theory, which has played such a large role in this case, applies. That's what that theory requires is particular knowledge that the bicycles, whatever product is at issue, is being distributed to the particular states. And the cases are several in which the U.S. Supreme Court and the Illinois Reviewing Courts have recognized that knowledge of distribution to the United States is not the same thing as knowledge of distribution within a particular state. And in fact, there is more evidence in this case, even that the distribution of Giant Brand Bicycles has so saturated the United States market that the Taiwanese manufacturer ought to be aware or should have been aware that they would have gone to every state in the union. So that could be constructive knowledge in another case were there evidence of that. But this case contains no such evidence. There is only the indication that in 1988, Giant Manufacturing was aware of distribution here. That is not the same thing as what the plaintiff has characterized it as. And in fact, there are substantial exaggerations made within the plaintiff's brief regarding the length of time of distribution within the U.S. and the length of time of Giant Manufacturing's knowledge of any such distribution. The interrogatory, the answer to the interrogatory states only that Giant was aware in 1988 that there was distribution here. Now, wasn't it more specific than that? Wasn't it more to the point that they were aware that the product was sold in Illinois? In 1988, they were aware of that, yes, Your Honor. However, there are additional answers to other interrogatories which specify very clearly that Giant was not aware of any distribution within Illinois for the years 2005 through 2009. And I'd submit that that interrogatory itself recognizes the fact that minimum contacts have an expiration date and that it doesn't matter that there may have been sufficient knowledge to make four minimum contacts 25 years ago or more. This Court has recognized in a pair of decisions far more recently than that that minimum contacts and knowledge of business within the state of Illinois, even three or four years prior to the filing of a complaint, is not sufficient to provide for personal jurisdiction over a defendant for the issues of that complaint. Do we know the particular component in question here? When that specifically was manufactured? That's not contained in the record either. The component, I believe, is the front fork, according to the plaintiff's allegations. As far as the manufacturer of that, we don't know that other than the bicycle was allegedly purchased in 2006. It's a 2007 model. And again, those would be inconsistent with holding a known contact in 1988 to have been sufficient for personal jurisdiction over a case. The case wasn't even filed until 2013. So that's been the case. Did the defendant ship bicycles to the United States? I beg your pardon, Your Honor? Did they ship bicycles to the United States? My understanding is that they are transferred to the custody of Guywin, the Dutch subsidiary, which then ships them to the United States. But they are shipped to... So their agent shipped them to the United States. Is that what you're telling me? A subsidiary, yes, which could be construed as an agent. And were they shipped all over the United States? The record doesn't indicate where particularly they were shipped. It certainly doesn't suggest that there were... But it would be fair to say that this bicycle was sold in every state of the Union? There's no indication from the record that that's the case. More importantly, there's no indication in the record that Giant Manufacturing... If that was the case. Do you know how many bicycles were shipped to the United States? I believe the record indicates something in the... Well, it depends on the relevant time period. But I believe there are indications that during the relevant time period there may have been as many as 176,000 shipped. That number comes to mind. There is no indication of where those bicycles went after they arrived on U.S. shores. Do they advertise at all in the United States? Giant Manufacturing does not advertise at all. What would you consider the website they have then? Isn't that a form of advertising? A website that says we have our products and they're distributed in Illinois? And I believe that was in 2014 when the website indicated that there was a number of distributor ships in Illinois. Isn't that a form of advertising? Well, the website I believe you're at is Giant Bicycle product. And what it indicates is that there are a number of dealerships. Not distributor ships. I think that may not have been what you intended to say. But there are dealerships that are authorized dealers of Giant Bicycle. That is a relationship that is strictly between Giant Bicycle and the retailers. I believe you said earlier that Giant Bicycle Inc. is the exclusive distributor for Giant Manufacturing. The U.S. distributor, correct. And it's a contractual relationship that is analogous in some ways to the distributor ship relationship in the recent U.S. Supreme Court case, which we were granted leave to cite subsequent to briefing. The Bustemeyer-Squibb v. Superior Court case. That was a case in which the defendant's pharmaceutical manufacturer had contracted not just with a U.S. distributor, but with a U.S. distributor that was based in the foreign state. And the Supreme Court said that that was not sufficient to establish minimum contacts. But we're dealing more here beyond the question of whether there was a contract. What we're dealing here is whether or not your client was actually in the stream of commerce in Illinois and at the time in question. Well, the question is whether, there certainly is no question that the Giant Manufacturing introduced its product into the global stream of commerce. And so that, to the extent that that is an element of the stream of commerce theory, that's not in dispute and that's acknowledged. The question, though, is what, if anything, Giant Manufacturing did to guide its products to the foreign state of Illinois. And the cases, it's certainly true that the case law concerning the stream of commerce theory is unsettled, to put it mildly, but the cases do consistently come down and recognize and underscore the importance of purposeful availment of the benefits and protections of the state. Supreme Court justices have recognized that this requires something more than merely putting the product into the stream of commerce. It requires something, as Justice Breyer stated in his concurrence in the McIntyre case, it requires something to the effect on the order of special marketing or adherence to state regulations or something that is specific to the particular foreign state. And there's certainly nothing of that nature here with respect to Giant Manufacturing. Those are things that Giant Bicycle undertook via, for instance, the website, a good example of a contact that would be appropriate for Giant Bicycle if there were any question about personal jurisdiction over that defendant. But it's not something that can be attributed to Giant Manufacturing in a way that would be sufficient for minimum contacts under the Supreme Court cases dealing with due process and requiring purposeful availment of the state's benefits and protections in order to subject such a defendant to personal jurisdiction. How is this case any different than Russell? Russell, as your Honor is familiar with that case, recognized that there were a number of specific contacts that the foreign defendant, the French bearing manufacturer, had with the state of Illinois. I think one of the most important contacts was that one of its senior executives had visited the Rockford plant of Hamilton Sunstrand in an effort to develop Illinois business. There was also evidence of a vast number of the company's products that had been sold within Illinois with the knowledge of the French manufacturer. Those were all things that the court understood as being relevant to personal jurisdiction, both when your Honor decided that case in this court and when the Supreme Court affirmed that decision. But the grounds for personal jurisdiction in Russell were substantially greater than what is to be found in this case. There is no comparable visit by a senior executive for any purpose, let alone the purpose of developing business with an Illinois manufacturer or contacts. I thought that Russell really hinged on the fact that the company admitted that they sold their product throughout the United States in every major city. And I think in writing that, I said that Chicago is a major city. Well, the idea that distribution within the United States, even widespread distribution might be enough for jurisdiction within every single state without particular evidence of a specific state, would respectfully be at odds with what the Supreme Court recognized, the U.S. Supreme Court recognized in McIntyre. It's inconsistent with the Illinois Supreme Court's 1988 decision in Wiles v. Maria Iarox. Those are both cases in which the court recognized that just because something is sold to the United States is not by itself evidence of knowledge that something is being sold in every single state. This court, in fact, followed the Wiles decision prior to McIntyre in Halsey v. Morris Enterprises, where it recognized the same thing. Here, this case is actually distasteful from Wiles because you have an exclusive distributor in Illinois. And I think the record indicated there was like 40 distributor ships throughout the state of Illinois. They have a website. They say they're the exclusive distributor for Giant Manufacturing. And as a result, they are representing themselves as someone that could provide the product, which is completely different, factually, from the Wiles case. Well, you know, my idea on it is there's only one distributor in the United States, and that's Giant Bicycle. Right. What we have in Illinois are dealerships, authorized dealerships, which are authorized by the distributor, Giant Bicycle, a defendant who doesn't channel his jurisdiction. Who happens to be the exclusive distributor for your client? In the United States, yes. And that much is known, has been known, to Giant Manufacturing. What can't be extrapolated from that knowledge and what can't be found anywhere in the record is knowledge by Giant Manufacturing that Giant Bicycle distributes its products in Illinois. That's not to be found in the record. It's not acknowledged by Giant Manufacturing. In fact, the uncontroverted evidence from responses in the interrogatories is that for the period between 2005 and 2009, Giant Manufacturing had no such knowledge. And there is no evidence regarding any other period because those other periods of time haven't been requested by the plaintiff. So that's very different, for instance, from the Russell case, where there was evidence that the defendant knew of the distribution of some of its products within the state of Illinois. So how would you define actual knowledge? Actual knowledge would have to be illustrated by evidence contained in the record that there was something, well, an acknowledgment, really, of that distribution, either in a documentary fashion or in response to interrogatories of some sort or in a deposition. That acknowledgment is not contained within the record. The plaintiff maintains the record is sufficient, but that is not consistent with cases that have required more specific knowledge like Russell and inconsistent with cases like McIntyre in the United States Supreme Court, where the court has required not just knowledge of distribution within a particular forum state, but also evidence of something more than merely dropping the product into the stream of commerce. In this case, we have something very different from Russell. We have something very different from a situation where the defendant has acknowledged awareness of its product being distributed within the United States and within the forum state. Russell is also distinguishable because the defendant in that case maintained that the products, it was understood in that case that the products that it knew about being distributed in Illinois were not the same as the product that was at issue in that litigation. The particular ball bearing was different from those that it knew of distribution within the forum state. And this court held, and the Supreme Court agreed, that the distribution of those other products was sufficient contact with Illinois for it to be consistent with due process for that French manufacturer to be subjected to jurisdiction here. And there's nothing of that nature with relation to the bicycles in this case. No indication that there was any other product manufactured by Giants that it is aware of being distributed within the boroughs of Illinois. That's very different from Russell. And while Russell may have been appropriately decided for the facts of that case, the distinction in those facts makes for a case that should be decided very differently under this case. You want to save some time for rebuttal? I would be happy to, Your Honor. All right. And I will do that. I will stay on my briefs for the moment and request that this court recognize the distinctions between this case and Russell, recognize that the distribution to the United States is not the same as distribution within a particular state, particularly the state of Illinois. I simply would request that this court reverse the order denying Giant Manufacturing's motion to quash service and to dismiss this case. Thank you. Thank you. May it please this Court, Counsel. Once again, my name is Ken Hoffman, along with Jay Mitchell. We represent Janet Kyle, who is the Plaintiff in the underlying action and the appellee here. We ask this Court today to affirm the ruling of the Circuit Court in finding that Giant Manufacturing does have sufficient minimum contacts with Illinois to meet federal and United States Illinois standards for minimum contacts and due process. The case law, going back to International Shoe, in trying to interpret what is minimum contacts, lawyers and courts have wrestled with that for quite some time. I think the factors that we see that give rise to a finding of minimum contacts are, first of all, when the sale is not isolated in the forum. And there's no indication that this was an isolated sale by Giant in Illinois. The interrogatory answers that were provided in this case indicate that since 1988, Giant Manufacturing has been aware that their bicycles were sold in this state. Counsel wants us to limit that. This has got to be a consistent answer in the interrogatory that it was only limited to 1988. The interrogatory, it's in the record at page 134, I believe, is that when were they first sold, and the answer was since 1988 they've been sold in Illinois. Further in the record, there's an indication that Giant Manufacturing was aware between 2005 and 2009 of their bicycles being shipped to retailers in Illinois. And other interrogatory answers indicate between 2010 and 2012, there were 711,000 bicycles sold in the United States for $176 million. So this is not an isolated event. Clearly there was an intent to serve all 50 states, and certainly the third largest city in the country, and the fifth most populous state in the union. So clearly this is not a fortuitous event where, like in Worldwide Volkswagen, someone bought a car in New York or New Jersey and got into a car accident in Oklahoma. It's not a fortuitous event, like in the Wiles case, where the plaintiff's employer traveled to Japan to buy the product and bring it back to Illinois. This was a plaintiff who brought bicycles here in the Chicagoland area through an authorized dealership that was supplied by Giant Bicycle, who has the exclusive right to sell those bicycles from, in essence, their controlling entity, Giant Manufacturing. Very similar to the Seiler v. Scripto lighter case, where the manufacturer used a whole loan subsidiary to distribute their product throughout the United States, including Illinois. And when that occurs, you see there is that regular and expected flow of the product into the forum, and we see that here. Again, this is not a fortuitous event. It's not isolated. They targeted this country to sell their product, and they certainly targeted Illinois, this forum, to sell their product. All right, but not to make their argument for them, but they're saying that even though they have a distributor, the distributor's not targeting them. Right. There's no indication in the record with regards to their having actual knowledge that that distribution actually takes place in Illinois. Your Honor, I would disagree with that position. Bonnie, too, Not my position. Correct, Your Honor. I disagree with that for the following reason. I think there is actual knowledge here. Bonnie, too, who signs the interrogatory answers for Giant Manufacturing in this case, also serves on the board of directors of Giant Bicycle. Certainly, she's fulfilling her obligations to both entities. She has this knowledge, and it goes between Giant Bicycle, where she serves on the board, and Giant Manufacturing, where she holds, I think, the role of chief financial officer. There's another individual, Mr. Young, who also has dual roles on both companies, so I would suggest that there is actual knowledge here, and that to say there is anything less than that would not be correct. The other point I wanted to make is that this direct knowledge cannot be pushed off. It's not as though this was something they did not know, as I mentioned a moment ago. This case is similar to Russell. It's similar to the Cy versus Scriptowriter case. They normally use their exclusive distributor to sell a bicycle in the United States and in this form. I don't think there's a lot more that I need to add on this point. I'm happy to answer any questions or stand on the breeze at this point, but I think that I've made my point as to why I think this is not an isolated set-up, why they deliberately directed themselves into this market. I have a question. How did the event here and the property that's alleged to have caused the event contribute to the plaintiff's alleged harm in this form? In this form? Yes, so we're in this form, and the incident happened in Iowa. They're claiming that they don't have actual knowledge of the product distributed in Illinois, so my question is how did the event and the property or the product contribute to the plaintiff's harm as a result to her being able to bring this action here? Well, the bicycle was purchased here in Illinois by one of the authorized dealers here in Illinois, which was sold to by Giant Bicycle, who's the exclusive distributor for Giant Manufacturing. I think that when a plaintiff in Illinois is an Illinois resident, purchases a product that fails, one of the proper venues for that cause of action would be Illinois. It cannot be a surprise to the defendant in this action that if they target their product to a firm to sell and that product fails to cause injury, that this would be a proper forum for that. I don't believe that a defendant in a Senate in Iowa would be a better forum for that. No, that's only a Senate. The defendant's position is the only place the plaintiff could seek redress for her injury would be to go to Taiwan, which I suggest would be a prohibitive step for the plaintiff to have to take. The other standard that the courts look to is whether it would be an undue burden for the defendant to have to defend themselves here, and as counsel mentioned in his argument, the same counsel for Giant Bicycle, who has submitted to personal jurisdiction here, is the same counsel for Giant Manufacturing, so the burden placed upon them to defend the action in this state would be slight, if at all. One last point to make that was in the record, Giant Bicycle Distributor does maintain a warehouse here in Illinois for the sale of these bicycles. So again, the manufacturer, I'm sure, is aware as to where the distributor is maintaining their product and what the purpose of the warehouse is in this state with employees. Is that warehouse Giant Manufacturing's warehouse, or is it Giant Bicycle's? Giant Bicycle maintains the warehouse in order to distribute the Giant Manufacturing product to, I assume, dealers here in Illinois and throughout the Midwest. Again, I'm not going to answer any further questions the court may have. If not, I will stand upon my briefs and ask this court to affirm the ruling of the circuit court and find that Giant Manufacturing does have minimum contacts and has submitted to personal jurisdiction here in the state. Thank you. What do you have to say about the warehouse? It's Giant Bicycles. It's Giant Bicycles. Giant Bicycle doesn't question or challenge jurisdiction in the state of Illinois. Isn't that a solely owned subsidiary? It's a wholly owned subsidiary of another corporation, which itself is a wholly owned subsidiary of Giant Manufacturing. But the ownership of property, which is a basis for personal jurisdiction in minimum contacts, is something that in the instance of the warehouse, the Elgin, is something that's attributable to Giant Bicycle. Well, isn't the distributor an agent of the manufacturer? There's no evidence to support, other than just a general sense that they have similar interests, there's no evidence to suggest that they have the sort of direct contractual ownership. Selling the same product, one makes it, one distributes it. One's the sole distributor owned by the company. It wasn't enough for the U.S. Supreme Court and Hirst and Myers, in which we were dealing with a distributor that was based in the foreign state. And the U.S. Supreme Court recognized that that was not a sufficient relationship to make for minimum contacts. What you're doing is you're taking a fact here and a fact there. You have to look at it as a whole. Correct. The whole picture. Yes, Your Honor. And the whole picture, in this case, means that Giant Manufacturing is merely a manufacturer. A substantially different corporation, a substantially different business from the distributorship. And that is why it leaves the distributorship to a separate company through a contractual relationship. Similar name, certainly, and certainly interests that coincide. But that's not the same as being an agent for all purposes, and it's not sufficient. The retention of a distributor is not sufficient to make for minimum contacts for personal jurisdiction. What case says that? Bristol-Myers recognizes that. Do you think the Bristol-Myers case is a case that is close to the facts of this case? It's close in every relevant respect. It's a product. It's a product that was distributed nationwide. It's a product that was distributed by a separate company, not the manufacturer. In fact, if there's any significant difference, it's the fact that that distributor was based in the forum states. So, in fact, there was a contractual relationship with a resident of the forum states, and yet the Supreme Court recognized that that was not enough to make for minimum contacts for personal jurisdiction. But in Bristol-Myers, what we're dealing with also is nonresident consumer claims. So parties that are bringing the action were not even residents of the state of California. That's correct. That's why the court said, you know, due process is being violated or it's not applicable. But the idea of the plaintiff is really not relevant to the question of whether the defendant has engaged in conduct that amounts to purposeful availment of the state's benefits and protections. It is true that there were only nonresidents involved in that case, but that doesn't impinge upon or doesn't implicate the same concerns that the personal jurisdiction does. Personal jurisdiction focuses on the defendant and on its contacts and on its conduct that does or does not make for personal jurisdiction. The conduct of, in that case, retaining a distributor within the forum state to distribute the product nationwide, including within the forum state, was not enough for personal jurisdiction. Is the concept of what is reasonable applicable to a jurisdictional case? In other words, is it reasonable for the state of Illinois to take jurisdiction over this type of case? Reasonableness is one concern. It's a concern that arises once minimum contacts have been determined. It's not, as the U.S. Supreme Court recognized in McIntyre, reasonableness or foreseeability are not alone enough to make for personal jurisdiction. Those are concerns that typically arise in cases after minimum contacts have been found, because there are cases in which the courts have recognized that even in the presence of sufficient minimum contacts, it may be unreasonable for a court to exercise jurisdiction over a particular defendant. That may be particularly in cases involving foreign nationals or foreign corporations. That may be cases that implicate issues of international relations, subjects that are better left, the courts have recognized, to the federal government and to the foreign policy apparatus of the executive branch. But those are concerns we maintain are implicated here. We haven't touched on them this morning, but they are addressed in our briefs. I do want to take one moment to correct one factual misstatement of the plaintiff during his argument. He was very specific and very emphatic about stressing the language he claimed to be in the response to the interrogatory that giant manufacturing has known his words since 1988, he stressed, of distribution of the product within Illinois. And he even cited page 134. He's correct about the page site. He's incorrect about the language. The reference in the interrogatory answer states only that the giant brand bicycles were first sold in the state of Illinois in 1988. And that is not equivalent to a statement that they have been sold since 1988 or for the last 25 or 30 years. That is a statement of a minimum contact that is far past its expiration date. But would it be reasonable to conclude that if the company knew in 1988 that they sold some bicycles in Illinois and their sales have increased to such a magnitude over the years that there's continual sales in the state of Illinois, you don't think that that's a reasonable conclusion that could be made, an inference that could be made? That's not an inference that can be drawn from what's in the record. It may be an inference that a plaintiff would like to draw, say, in the context of a closing argument, but it's not sufficient for the legal determination this Court needs to make as to whether the evidence supports a finding of knowledge on giant manufacturing's part of anything that has happened since 1988. It's particularly important to recognize that that inference would be inconsistent with explicit and specific answers of interrogatories which state that giant manufacturing had no such knowledge for the years from 2005 through 2009. And so to cite a contact that giant manufacturing has owned up to quite some time in the past as being a basis for personal jurisdiction for something that happened 25 years later would be at odds not only with the record, but with cases that recognize that minimum contacts of this sort do have an expiration date and it's more on the nature of three or four years than a quarter century. Were those interrogatories ever amended to correct any of the answers? There are many interrogatories that provide additional information, but they remain consistent on that particular point. They do not state on page 134, as the plaintiff cited, or anywhere else in the record that giant manufacturing has known anything since 1988, particularly given that period of time the plaintiff asked about between 2005 and 2009 when giant manufacturing has denied, uncontrovertedly, has denied knowing anything. The company didn't create or have records of what went into Illinois or what did not go into Illinois. Isn't that correct? That's correct. They didn't keep those kind of records. It's not their business. Correct. So, you know, do you think that the court is a vacuum and that we can't suppose things that occur based on inferences? I mean, if you sold bicycles in 88, do you think that that was an isolated instance? Those were isolated instances? I can only speak to what the record contains. The record contains an answer to an interrogatory asking when giant manufacturing was aware of its bicycles being sold and distributed within Illinois. It states 1988. To the extent that the plaintiff has attempted to extrapolate that or exaggerate the statement of what it knew in 1988 and to express and represent to this court that it says something it doesn't, speaks volumes, I think, about what the record actually says and what the record actually supports. A contact 25 years in the past is well past its expiration date and is no basis for personal jurisdiction. We respectfully would be happy to address any further questions to the court. So what would you like us to write? Would you like us to write that in order to show minimum contact, that there would have to be proof that on the year of the accident bicycles were sold in Illinois? Is that what we should write? If I may be so bold, Your Honor, since you asked, I think this court's opinion should say that a contact proved to be 25 years in the past is no longer sufficient for personal jurisdiction, particularly when the evidence also proves and is not controverted that the defendant in question, the foreign defendant, did not have the particular knowledge for the years surrounding the purchase of the bicycle or for any time within the several years prior to the filing of the complaint. What the actual expiration date, perhaps, is for this court to decide. But the Moore-Camarillo case and the Reeves case, Saginaro-Bruce, hold that it can't be any more than three or four years. And the record is only sufficient to prove something that's a quarter century old, not enough to establish personal jurisdiction. I'd be happy to address any further questions the court might have, but in the absence of any, I would simply ask that the court reverse the order denying Giant Manufacturing's motion to quash service and to dismiss this case. Thank you. Thank you. Well, I think you've given us a very interesting case. Both of you did a very good job in your presentation. And this is the type of case that sometimes goes up to the United States Supreme Court. Actually, Russell went there on a PLA. And we'll take this case under advice. Thank you very much.